The first case of the day is 4090022, the People v. Orlando Dorsey. For the appellant, we have Charles Hoffman and for the appellate, Charles Mansfield. Mr. Hoffman. Good morning, Your Honors. My name is Charles Hoffman. I represent the appellant, Mr. Orlando Dorsey, who was convicted of possession of cocaine with intent to deliver and sentenced to 40 years in prison. This is an appeal from the denial of post-conviction relief following an evidentiary hearing, and the sole issue is whether Mr. Dorsey's trial lawyer was ineffective for failing to request a limiting instruction on other evidence, other crimes evidence. As Justice Appleton is probably aware, this is the third time this case and this issue have been before this Court. In the previous post-conviction appeal, after the trial court summarily dismissed the petition, this Court found that Mr. Dorsey had stated a non-frivolous claim and remanded it for further post-conviction proceedings. On remand, an evidentiary hearing was held, after which the trial judge found that Mr. Dorsey had failed to establish either prong of the ineffective assistance of counsel test of Strickland v. Washington. As to the performance prong, the trial judge held that counsel's failure to request a limiting instruction was a reasonable strategic decision, and as to the prejudice prong, the trial judge found that Mr. Dorsey hadn't been prejudiced because the prosecutor hadn't emphasized the other crimes evidence in his closing argument. We believe that the trial court's ruling on both prongs was erroneous. As to the performance prong, we think the trial judge was wrong for three reasons. First, the judge was wrong because he ignored the law of the case doctrine which bars litigation of an issue that's already been decided on appeal, and in the previous post-conviction appeal, this Court explicitly found on the performance prong that trial counsel's performance was deficient. Are you sure? My reading of that case is not that definitive. Well, let me quote from the opinion. The attorney's failure to request a limiting instruction demonstrates that his performance was deficient, and as a matter of fact, Justice Myers-Croft, the trial judge acknowledged when this case went back that this Court had found that counsel's performance was deficient. But what the judge did was he said, I'm not going to follow the appellate court's opinion in this case because it's a Rule 23 which has no precedential value. I'm going to follow the appellate court's opinion in People v. Johnson, which was a published opinion, which held in that case that trial counsel's failure to request a limiting instruction wasn't an effective assistance. I think the judge, with all due respect, misunderstood Rule 23. It's true that a Rule 23 order isn't binding precedent in other cases, but both the rule itself and case law holds that it is binding precedent in the case in which the issue was decided. I thought the case also said the record here was simply insufficient for us to make an adequate determination on this issue. I believe that what the Court held was that Mr. Dorsey hadn't established effective assistance of counsel, and the way I understood the opinion and the way the trial judge understood the opinion, it was remanded. What the trial judge said was, okay, they said it was deficient performance and they remanded it for me to make a finding on prejudice, but I'm going to go back to both prongs. But Justice Myerscough, even if you put aside the question of law of the case doctrine, let's assume that doesn't apply, there are still two other reasons why the trial judge was wrong in finding that counsel's performance wasn't deficient. Mainly because the trial judge's ruling that counsel made a strategic decision simply was unsupported by the evidence. Trial counsel testified at the remand hearing, and when he was questioned by the lawyers, he said basically two things. First, he acknowledged that it was possible that there could be a circumstance in which he would not want a limiting instruction because it might emphasize the other crimes evidence in the case. But he could not recall whether he had a tactical reason for not requesting the instruction in this case. So he assumed that his failure to request the instruction was simply an oversight. However, when the trial judge confronted him with the transcript of the instructions conference at which the judge had offered to give the instruction and counsel refused, counsel then realized that it couldn't have been a mere oversight because the question had been raised at the instruction conference. And counsel ultimately agreed with the trial judge that in failing to request the limiting instruction, he must have had a reason at the time, but he can't think of it now. So ultimately, counsel's testimony was, I must have had a reason for not requesting that instruction. I just can't think of what it was. So based on that testimony, the trial judge concluded that counsel did have a reasonable strategic reason and that was to not emphasize the other crimes evidence. Well, wouldn't it be reasonable for Mr. Kessinger to have said, our defense is he made up this statement and this statement is so unbelievable that we're going to leave it as it is. I mean, it's embellished. Why wouldn't that be a reasonable tactical? Here's why it isn't, Justice Myers-Koth. I think if counsel had said at the instructions conference, judge, we don't want this other crimes evidence emphasized. It's pretty damaging. So if the state will agree not to mention it in closing argument and not bring the jury's attention to it, we'll be happy not to ask for the instruction. But if the state is going to talk about it in closing, that would kind of defeat the purpose of our not requesting it. So we want the instruction if the state is going to mention it in their closing argument. I think that would have been a reasonable tactical decision. The problem here is, counsel left his client in the worst of both worlds. The jury heard this... Well, I don't disagree. Right. I don't disagree. It's just, isn't that a potential tactic he could have been thinking of? Yes, but it was only half a tactic. Because if his strategy was to avoid the jury focusing on that, he needed to make sure the state didn't mention it. Because otherwise, what happened was, the state was free to focus on it. And in fact, the state did. The prosecutor told the juror in closing argument, you know, and you may reasonably think that Mr. Dorsey's arguments were unbelievable, but to 12 lay jurors, it probably was incredibly persuasive. Because what the prosecutor said to the jurors in closing argument, Mr. Dorsey's admissions to prior dealings in cocaine were, quote, extremely detailed. The number of people he does business with, the amounts he buys and sells, where he gets them, the vehicles these people drive. The prosecutor also said, and he told Lieutenant Voges in detail, how he does business, how he's involved in this distribution business, and that's exactly what he was doing on this date. So if it was a strategy, I don't think it was a reasonable strategy. And as the Supreme Court has told us, the question isn't whether it's a strategy, the question is whether it's a reasonable strategy. And I just don't think that it was a reasonable strategy at this time. And the other reason I think it was wrong for the trial judge to conclude that it was a strategy is because counsel never actually testified in this case that his strategy was to avoid emphasizing the evidence. Well, it struck me that he was perhaps following on his own sword. Well, he may have been, but if he did, it leaves Mr. Dorsey in a somewhat awkward position because how can he establish ineffective assistance of counsel other than by his lawyer's testimony? And I think there's a third reason that, well, let me put it this way. Mr. Dorsey is at the mercy of counsel, and I think this Court can look at the record and decide even if that was Mr. Kessinger's strategy, it was unreasonable in this case. Does the Department have to prove prejudice? Yes. What was the prejudice here? Look at the evidence against this gentleman. Actually, the trial judge found that we hadn't proved prejudice for two reasons. First, because the prosecutor didn't emphasize it in closing, and as I've just said, Justice Breyer, the prosecutor did. The second reason the trial judge said we hadn't met prejudice is because of the evidence against the defendant. And I think that if you look at what the other crime's evidence was, which was a detailed accounting of numerous prior dealings in cocaine, that certainly was prejudicial. And the evidence against the defendant was not overwhelming. It's true that he was in the apartment when the police raided the apartment, and he was found in the kitchen where the cocaine was. However, he had very little ties to this apartment. I think the police found a letter from Carle Hospital, a bill from the hospital with the address of this apartment on it, and I believe an automobile registration with his name on it, but with a different address. This was his sister's apartment. And if you look at the evidence that supposedly tied him to the cocaine, there was almost nothing other than being in the same room. He had no drugs or drug paraphernalia on his person. His fingerprints were found on nothing related to the cocaine. It was his sister who was in an upstairs bedroom counting money and looking at the drug ledger, and it was two other men in the apartment who were attempting to flush cocaine down the toilet. Mr. Dorsey had no involvement with this other than being in the apartment at the time the police raided it. Now, that evidence we concede was sufficient to sustain his conviction, but it certainly wasn't sufficient to say that he didn't meet the prejudice prong. And of course, the prejudice prong isn't outcome determinative. He doesn't have to prove that it's more likely than not that he would have acquitted, just that there's a reasonable probability that the outcome would have been different. And the real prejudice here is that in the absence of a limiting instruction, I think it is clear that the jurors would have relied on the other crime's evidence, his admission to prior possession of cocaine, to found that he actually possessed the cocaine in this case. And that's exactly what they should not have done. The limiting instruction would have told these jurors that you can only consider his admission to prior possession of cocaine on the question of whether he had the intent to distribute this cocaine, and only if you first find that he did possess this cocaine. I think once the jurors heard this other crime's evidence, which was incredibly prejudicial, I don't think that there's evidence that I can think of that's more prejudicial these days than evidence that a defendant is a major drug dealer in a community. And I think once the jurors heard this other crime's evidence without giving any guidance whatsoever on how to consider it, there was no chance that Mr. Dorsey was going to be acquitted in this case. And I think that's the prejudice. Now had the jurors been properly instructed on the limited way in which they could consider this incredibly prejudicial evidence, I think there is a reasonable probability that he would have been acquitted. And it's for that reason that I think his lawyer was ineffective for failing to request the limiting instruction. Again, Justice Myerscough, it may have been a reasonable strategy for trial counsel in this case to try and avoid emphasizing the evidence. But as I argued previously, that strategy was doomed to fail unless counsel was assured that the state wasn't going to bring this up in closing. Because again, it doesn't do any good for the defense to try and ignore this evidence while the prosecution focuses on it in closing argument. So if it was a strategy, it certainly backfired. So what did the defendant say about what he himself had done? The defendant, well, he told the police before trial that the cocaine in the apartment was his and that he was a major cocaine dealer and had done so on numerous occasions. At trial he testified that he said that to protect his sister. He didn't want his sister to go to jail. He didn't want his sister's children to be taken away. So he took the blame for this. But at trial he said the cocaine was not his and he had made up the statement about all of his prior dealings in cocaine. So really the question in this case for the jurors was Mr. Dorsey's credibility. If they believed his statement to the police prior to trial, they were going to convict him. If they believed his trial testimony, they were going to acquit him. And I think what probably happened here is that the jurors used the other crime's evidence, his admissions to numerous possessions of cocaine in the past, to reject his trial testimony. And if they did that, that was an error. The jurors should not have considered that testimony in deciding whether or not he possessed the cocaine in the apartment. But nobody told them that. And I think that is a real problem in this case. How do you get away from him telling the police that he did have it and they saw him cutting it up when he was in the kitchen? He wasn't actually cutting it up, Justice McCullough. He told the police that that's what he was doing. He said... Well, do we accept what he said he was doing or not? Well, had he not testified at trial at all, then the jurors obviously would be free to simply believe what he said before trial. But there was a credibility question here. Prior to trial, he said he was involved with the cocaine. At trial, he said he wasn't. It was up to the jurors. Well, the jurors did have both of those, didn't they? They did. And I think the problem here, Justice McCullough, is they probably used the other crime's evidence to credit his pretrial testimony rather than his trial testimony. And that's an error. That was wrong. The jurors should not have used the other crime's evidence to decide whether or not he possessed the cocaine. That's just simply wrong. It's not the purpose for which that evidence was admitted. Unfortunately, nobody told the jurors that. And I think that deprived Mr. Dorsey of a fair trial in this case. And for that reason, we'd ask this court to reverse the trial court's decision denying post-conviction relief, vacate Mr. Dorsey's conviction, and remand the case for a new trial. Unless the court has questions. Thank you very much. Thank you. Mr. Mansfield? Thank you, Your Honor, counsel. Justice McCullough, I believe I am going to say a few more words this morning than I did yesterday morning when you were on the panel. Today, we are in the same position, all of us, as we were on direct appeal and on the first appeal. We are in a position of having to define defense counsel Kissinger's trial strategy. He went to trial with a serious problem. His client said, I possessed it. It was all mine. I was in the kitchen cutting it up. I was involved in preparing it for distribution. There was no way that that confession could be excluded or kept from the jury. But what had happened is the defendant also told this grand, wondrous story about being a big, important drug dealer, etc., etc., which is incredible, meaning not credible. I mean, it's just not believable the amounts and the involvement that he talked about. So it seems to me that defense counsel Kissinger's strategy, grand plan for the trial, was to let all of this in, knowing he couldn't keep the confession out, let in the big, grandiose story and hope that the jury would say, well, that grandiose story is a lie and probably this claim that it's his is a lie. Therefore, it makes sense for counsel to decline the trial court's offer to give IPI 3.14. Well, if that were true, Mr. Mansfield, why didn't Mr. Kissinger say it? Because Mr. Kissinger is dedicated to protecting his client's penal interest. And by not saying that that was my plan, that was my strategy, he leaves open the possibility of interpretation that, as he said in his affidavit, not giving IPI 3.14 was an oversight, or as he later admitted, saying, well, yeah, I must have had a reason, but I don't recall. Because his efforts still, I believe, are directed to protecting the penal interest of Mr. Dorsey. He may well not remember why, but he is... Now, I'm going to say I don't remember from the stage three transcript whether he was ever asked, well, what was your strategy at all, and whether the judge, who was also the trial judge, viewed Kissinger's strategy as disbelieve all or believe all. I don't know. Did I answer your question? You have asked about the prejudice prong. Well, I'm sorry. Let me go back to the performance prong for a minute. This court has observed, the trial court observed, and the jury has Kissinger himself acknowledged, there can be reasons to decline, to eschew IPI 3.14. I think preeminent is the reasonable desire to avoid unduly emphasizing the other crime's evidence. That's your 2006 decision in Johnson. Importantly, I think it's important to recognize that IPI 3.14 is not one of those instructions, like the presumption of innocence, which must be given. True, this court has said many times it should be given. It's never said it must be given. It should be given to avoid prejudice. Now, Johnson in 2006, Hensley in 2004, Denny in 1993, all of which are in my brief. But in each of these decisions, this court also made it clear that the defendant can object to giving the instruction. And fundamentally, I think that's what happened here through counsel, and it is reasonable for counsel to have done so in light of the very serious problems his client faced because of the confession. Let me, unless you have other questions. What were the circumstances surrounding the confession? Where was he when the confession was made? Who was present? Okay. I don't recall in detail. He was still in the apartment when he spoke with the police officer. His sister was in the bedroom. I believe she was being interviewed. I think they were, and please, I apologize, I don't remember for sure. I think they were in separate rooms. He was aware that his sister was being interviewed. And somewhere in the depth of my mind, I remember testimony that he believed somebody from DCFS or Child Welfare had knocked at the door and wanted to take his sister's children, something like that. How many police officers were there? Several. Several? Several. To the best of my, I know there were, two I remember, and again, I apologize. There was one interviewing the sister. There was one interviewing Defendant Dorsey. I think there was one upstairs searching, executing the search warrant. So there were at least three, and I imagine there were probably some more. I don't recall. I just don't recall. I apologize. I didn't prepare for that one. Certainly there were enough to keep anybody from fleeing and to prevent the evidence from being destroyed, which brings me to another police officer, the one who caught a, I'll call him a cop, trying to flush cocaine down the toilet. So we're up to perhaps four, to the best of my knowledge, maybe more. So it was a perhaps initially chaotic, but from the police point of view, subsequently well-controlled situation. Again, there were people moving from room to room. I don't know, am I wandering seriously off track? I'm sorry. I'm sorry if I was. Other questions, because I would like to say a few words about the law of the case. Was the emphasis in closing argument as strong as what Mr. Hoffman indicated? My reading of the transcript is that it is not as strong as he indicated. It was there, no denying it. There were some, what did I count it? I don't remember the numbers. Ten or so lines out of 340. And I did put it in my brief. I'm afraid I'm pulling a Kessinger. I don't remember. Was it brought out? Yes. Was a strong sentence made referring to that? Yes. Was most of the argument directing the jury's attention to what the police found and to defendant's confession? Yes. Other questions before I shift? Law of the case doctrine has been waived, forfeited if Justice Stikeman were here, because it was not raised at the evidentiary hearing, at the Stage 3 hearing. And it does not apply because the issue at the Stage 1 hearing, as identified by this court, was whether defendant's petition raises a legally sufficient, non-frivolous claim when all the well-planned allegations are taken as true. That's from page 5 of the order. The question of law that this court decided was whether defendant had at least stated a non-frivolous claim and his post-conviction petition should proceed to a second-stage inquiry. That is from the order at page 10. Obviously this court found that he had stated a non-frivolous claim and that further proceedings were appropriate. Here, however, the question is very different. Fundamentally, it is whether defendant's trial counsel provided ineffective assistance when he decided to not tender limiting instruction IPI 3.14. That issue was not raised and was expressly not decided or addressed by this court in its review of the Stage 1 dismissal of this petition. Do you have any other questions, Your Honor? No, thank you. Thank you very much. Mr. Hawkins, you're welcome. I do wish I could give you back some time. It's true, as counsel said, that in Peeble v. Johnson and other cases, this court has held that the failure to give a limiting instruction may not be ineffective assistance of counsel. But Johnson didn't hold that the failure to give the instruction can never be ineffective assistance of counsel. And in fact, there are cases, which we've cited in our brief, which hold otherwise. So it's a case-by-case decision. And in the previous post-conviction appeal in this case, this court couldn't, given that procedural posture, grant relief, grant the petition. Because obviously, at that stage, the state hadn't had any input at Stage 1 in the post-conviction. The judge dismissed it as frivolous without any input from the state. But I think if you read the court's previous opinion, this court fell just short of granting relief. And I think based on how this court viewed the record of the case, it's clear that the court found that, at least as to the procedural performance prong, that was met. As I said in my opening argument, quoting the court, it said performance was deficient. And at page 10, which counsel mentioned, this court said, based on the limited record before us and the procedural posture of this case, we believe reasonable counsel would have recognized the importance of advising the jury that it was hearing evidence of other crimes and ensuring that the jury was aware of the limited purpose for which it could consider that evidence. It reasonably follows that counsel should have asked the court to give a limiting instruction at the time the evidence was admitted, or at the very least should have tendered an appropriate instruction at the close of the evidence. Absent such an instruction, the evidence of other offenses may have been given far greater weight than it deserved and unfairly skipped the scales in favor of believing defendant's admission rather than his testimony at trial. And that's the prejudice, I think, that I was talking about earlier, Justice McCullough. It's interesting that counsel now says that Mr. Dorsey's admissions were not credible. I wish the trial prosecutor had taken that view. I wish the trial prosecutor had thought that Mr. Dorsey's prior, his admissions to prior possession of cocaine was incredible. But trial prosecutor took the opposite tack. He argued to the jury that Mr. Dorsey's admissions were very credible. And obviously that's what matters here, what was argued to the jury. What was wrong with that, arguing that it was credible? There was absolutely nothing wrong with arguing that it was credible. What was wrong was arguing that it was credible without anyone telling the jurors the purpose for which it was admitted. This wasn't admitted generally, Justice McCullough. This was other crimes evidence which was admitted for a very limited purpose. The problem was nobody told the jurors what that purpose was. And in the absence of guidance and direction from the trial judge, there's no question in this case, in my mind, that they considered it for an improper person and that prejudice Mr. Dorsey. Now it's true that maybe there were only 10 lines out of 340 in the prosecutor's closing argument in which he stressed this evidence. But I think common sense tells us that a brief reference to highly prejudicial evidence may affect a jury more than lengthy reference to less prejudicial evidence. And again, I can't think of any evidence that is more prejudicial than a defendant's admission to jurors that he is a major crack cocaine dealer in their community. So I think the prosecutor didn't need to make his closing argument entirely about the other crimes evidence. But he certainly said enough to put in the jury's mind that this evidence is convincing, it's persuasive, and the jurors used that improperly to find that Mr. Dorsey in fact possessed the cocaine when they were only supposed to use it after they found that he possessed the cane without considering that evidence on the question of his intent to deliver. The court has no questions. I thank you for your time. Thank you, Mr. Hoffman. We'll take this matter under advisement and recess for a few moments.